19469

UNITED STATES STEEL CORPORATION, Appellant, v. SOUTH CAROLINA TAX COMMISSION, Respondent

(191 S. E. (2d) 9)

154

*Messrs. McKay, Sherrill, Walker, Townsend & Wilkins,* of Columbia, *for Appellant,*

*Messrs. Daniel R. McLeod, Atty. Gen.,* and *Joe L. Allen, Jr., G. Lewis Argoe, Jr., Asst. Attys. Gen.,* of Columbia, *for Respondent,*

August 8, 1972.

BRAILSFORD, Justice:

United States Steel Corporation brought this action seeking a refund of $105,208.51 paid by reason of a deficiency assessment in corporate income taxes for the years 1960-66 and corporate license taxes for the years 1960-67. The circuit court, rejecting the master's recommendation, entered judgment against the taxpayer. We affirm.

During the years in question, as now, South Carolina taxed a portion of the net income of every foreign corporation "transacting, conducting, (or) doing business or having an income within the jurisdiction of this State . . .." Section 65-222, Code of 1962. The statutory policy is designed to apportion to South Carolina a fraction of the taxpayer's total income reasonably attributable to its business activity in this State. Section 65-222.2. The size of that fraction is determined by the application of Section 65-279.3. If the taxpayer's principal business in South Carolina is either (1) manufacturing, including named activities identified with manufacturing, or (2) selling, including named activities identified with selling, the fraction of the taxpayer's total apportionable income, elsewhere defined, attributed to and taxed by South Carolina is the average of three other fractions. Section 65-279.3. Simplified, these three are: (1) the ratio of taxpayer's property used in South Carolina to its property used everywhere; (2) the ratio of taxpayer's South Carolina payroll to its payroll everywhere; (3) the ratio of taxpayer's sales in South Carolina to its sales everywhere. Sections 65-279.4 to -279.6. These three ratios are commonly called the property factor, the payroll factor, and the sales factor.

During the years in question, a taxpayer principally engaged in South Carolina in manufacturing, as defined, was permitted to elect an alternate method in figuring the frac-

tion of its income taxable here. Instead of averaging the three ratios named above, it could eliminate the *sales* factor and use the average of the property and payroll factors only. Section 65-279.7. A taxpayer principally engaged in South Carolina in selling, as defined, was given an option different from that available to one principally engaged here in manufacturing. A seller was permitted to eliminate the *payroll* factor and use the average of the property and sales factors only. Section 65-279.8. Thus, either kind of taxpayer could use the same three-factor formula; but those principally engaged here in manufacturing could use the property and payroll formulas only, if they wished; while those principally engaged here in selling could use the property and sales factors only, if they wished.

Ninety-five percent of the income which appellant derived from South Carolina during the years in question resulted from sales of steel goods to South Carolina customers. These goods were shipped into South Carolina from places where they were manufactured in other states. Appellant had little or nothing to do with these goods after consigning them to carriers at the point of manufacture for shipment to South Carolina. Further fabrication, if needed, was done by the South Carolina customer after delivery. The remaining five percent of appellant's revenue derived from South Carolina resulted primarily from fabrication and erection of bridges and fences in this State.

Appellant derived eighty million dollars in revenue from sales to South Carolina customers of goods made elsewhere during the years in question. During that period it made or completed fabrication or erection in this State of goods worth a negligible sum in comparison.

Appellant, contending that it is exclusively in the manufacturing business, in South Carolina as well as in those states in which its factories are located, claims the right to employ the two-factor formula of Section 65-279.7 to determine the fraction of its net income apportionable to this State. Appellant argues that selling

must be viewed as the final step, so to speak, in the manufacturing process. Characterizing its operation as essentially unitary in nature, appellant contends that the legislature did not intend it to be classed as a seller in this State, when nationally it is a manufacturer. The use of this formula yields a negligible tax liability since appellant's property and payroll here were slight.

Whatever the metaphysical merits of appellant's self-image, we think it clear as can be that appellant is principally engaged in this State in sales, within the meaning of the applicable statutes. Appellant's products are *manufactured in* Alabama, Pennsylvania, and Ohio, then *sold* in South Carolina.[1] None of the authorities cited to the contrary is persuasive.[2]

■ Appellant next contends that, if the relevant statutes are construed as we do construe them, they amount to an impermissible discrimination against interstate commerce by favoring local business. It is significant to note, first, what the appellant does *not* contend. It does not contend that the basic three-factor formula contravenes the Commerce Clause of the constitution. Nor does it contend that its activities in South Carolina form an insufficient nexus with this State to justify the imposition of a tax on some reasonably apportioned fraction of its total income. The appellant's sole contention under the Commerce Clause

---

[1] The technical situs at which a sale is confirmed, controlling for other legal purposes, is irrelevant here. Section 65-279.6.

[2] For example, appellant cites *Kaiser Cement and Gypsum Corp. v. State Tax Comm.*, 250 Or. 374, 443 P. (2d) 233 (1968). In an earlier case the Oregon court had construed a statute granting a tax offset to corporations "principally engaged in manufacture" as applicable only to corporations principally so engaged within Oregon. The legislature promptly amended the statute to clarify its contrary intent, whereupon the court corrected its earlier interpretation. Thus, the court had mistakenly read into the Oregon statute a phrase which our statutes explicitly contain: "principally engaged *in this State."*

The General Assembly has repealed the statutes which spawned this litigation, Sections 65-279.7 and 65-279.8. 57 Stat. 709 (1971). Since the legislature repealed *both* the manufacturer's and the seller's alternatives to the basic three-factor formula, we cannot perceive in the act of repeal any legislative "admission" favoring the interpretation which appellant urges.

is that it is wrongly prevented from electing the manufacturer's alternative to the three-factor formula.

We find no showing of discrimination against interstate commerce, either inherently or as applied, in the legislature's decision to treat interstate businesses differently in the apportionment of income, according to the principal nature of their activity in South Carolina. There is no claim that the property and payroll ratios are not rational *indicia* of the relation borne to this State by an interstate taxpayer whose principal business here is manufacturing; nor that the property and sales ratios do not fairly reflect the activity of one principally engaged here in sales.

The Commerce Clause does not forbid state taxation of some portion of the net income of an interstate business, so long as the portion taxed is reasonably attributable to income-producing activity within the state and the tax is nondiscriminatory. *Northwestern States Portland Cement Co. v. Minnesota*, 358 U. S. 450, 79 S. Ct. 357, 3 L. Ed. (2d) 421 (1959). No authority has been cited, and none have we found, which limits the state to a single income-apportionment formula, regardless of the taxpayer's activities within the state. *Cf. Norfolk & Western Ry. v. North Carolina ex rel. Maxwell*, 297 U. S. 682, 56 S. Ct. 625, 80 L. Ed. 977 (1936), involving use of a mileage ratio for apportioning the income of interstate railroads.

Appellant contends that the alternative formulas discriminate against commerce by encouraging foreign corporations to engage themselves principally in manufacturing rather than sales. But it has made no effort to show that its income tax burden would have been less had it derived the same eighty millions income from principally manufacturing activity here instead of sales. We suspect that that burden would have been greater, not less.

Appellant relies heavily on *Halliburton Oil Well Cementing Co. v. Reily*, 373 U. S. 64, 83 S. Ct. 1201, 10 L. Ed. (2d) 202 (1963). That case involved a use tax imposed by

Louisiana on the cost of labor and overhead attributable to the manufacture of goods made in Oklahoma, then used in Louisiana. Had the goods been made in Louisiana, labor and overhead costs would not have been counted in figuring the use tax. The United States Supreme Court found this treatment to be a discrimination against interstate commerce. We find no analogy therein to the present case. As noted above, there is no showing that appellant's income tax burden would have been less had it manufactured the goods in South Carolina for sale elsewhere. Had it manufactured them here, however, its connection with South Carolina would have differed essentially from the connection it actually had; and different tax treatment, reasonably related to the changed activity, would have been justified in any event.

Appellant claims that thirty-five millions of the dollars it derived from sales in South Carolina were also taxed at the point of manufacture and shipment in Alabama, thereby subjecting it to double taxation. This contention misconceives the nature of the income-apportioning process in both States. The thirty-five million dollar sum was not taxed as such by either State under its income tax statutes. Rather, this sum was used by both States as one component in each State's effort to gauge the portion of appellant's income fairly attributable to each. The apportionment formulas are an occasionally awkward attempt at accuracy; but they are not for that reason unconstitutional. Appellant does not claim that more than 100% of its net income is being taxed in the aggregate of states where it earns that income. Nor does it claim that Alabama and South Carolina together have apportioned to themselves an unfair share of its income. We note that the three-factor apportionment formula, for example, results in attributing to South Carolina only one-tenth of one percent of appellant's total apportionable income, while its South Carolina sales accounted for three times that proportion of its total sales. The fact that the amount of a given sale has been fig-

ured in the apportionment formulas of two states is insufficient, standing alone, to show impermissible double taxation.[3]

What has been said of appellant's contentions under the Commerce Clause apply with like force to its contentions under the Equal Protection Clause. There is no showing that the statutory dichotomy between manufacturers and sellers is arbitrary and capricious. Nor is it shown that the different income-apportionment ratios assigned to these two kinds of taxpayer bear an unreasonable relation to the fundamentally different benefits conferred, for which the State seeks recompense.

No special contention is made with respect to the imposition of a corporate license tax, which is governed by like considerations.

The judgment is affirmed.

Moss, C. J., and LEWIS, BUSSEY and LITTLEJOHN, JJ., concur.

---

[3] South Carolina's three-factor apportionment formula corresponds broadly to that suggested by the National Conference of Commissioners on Uniform State Laws. See Uniform Division of Income for Tax Purposes Act, Sections 9 *et seq.*, 9A Uniform Laws Annotated 449 *et seq.* (1965). If Alabama has included sales to South Carolina customers in its own apportionment formula, it has departed from the uniform act. See Section 16. We think the concept of double taxation has no application here; but if double taxation has occurred, appellant must look elsewhere for the fault.