Joseph P. **MAULER**, Plaintiff,

v.

Keith **TITUS**, Bill Nation, and Mike Gregorio, Defendants.

No. 84–91.

Supreme Court of Wyoming.

March 20, 1985.

Harold Frederick Buck of Kline & Buck, Cheyenne, for plaintiff.

William D. Bagley and Mary L. Scheible of Bagley, Hickey, Evans & Statkus, Cheyenne, for defendants.

Blair Trautwein, Amicus Curiae Committee, The Wyoming Trial Lawyers Association, Cheyenne, filed an amicus curiae brief.

Before THOMAS *, ROSE, ROONEY **, BROWN and CARDINE, JJ.

ROSE, Justice.

The United States District Court for the District of Wyoming certified to this court [1] the following question pertaining to the Wyoming Worker's Compensation Act, §§ 27–12–101 through 27–12–804, W.S. 1977:

"If an employee is injured in the month immediately subsequent to the month of hire and prior to the reporting date for the month of hire, how does W.S. § 27–12–103(c) operate regarding the potential loss of employer immunity?"

We have agreed to answer this question which requires an interpretation of the statutory provisions relating to an employer's exposure to suit for failure to pay the

---

\* Became Chief Justice January 1, 1985.

\*\* Chief Justice at the time of oral arguments.

**1.** The Federal Court State Law Certificate Procedure Act, §§ 1–13–104 through 1–13–107, W.S. 1977, as implemented by Rules 11.01 through 11.07, W.R.A.P., authorizes review by this court of certified questions of law which may be determinative of a cause pending in federal court.

**2.** Section 27–12–201(a), W.S.1977, provides in part:

premiums on an injured employee's earnings.

## FACTS

In late July of 1982, defendant Keith Titus hired plaintiff Joseph Mauler to perform plumbing and other work in the renovation of the Plains Hotel in Cheyenne, Wyoming. On August 4, 1982, plaintiff sustained work-related injuries when a portion of the hotel's ceiling collapsed on him. Plaintiff applied for and has received benefits for his injuries from the worker's compensation fund.

Plaintiff brought this action in federal district court, alleging that his employer, Titus, a co-employee, Bill Nation, and a contractor, Mike Gregorio, caused his injuries through their willful and wanton or negligent conduct. Defendants Titus and Nation moved the court to dismiss the claims against them or, in the alternative, to grant summary judgment, based on their immunity to suit under the Wyoming Worker's Compensation Act.

In resistance to the defendants' motion, plaintiff asserted that Titus had lost his immunity to suit by his failure to make timely payments to the worker's compensation fund, as required by § 27–12–201(a), W.S.1977,[2] for the months of May, June, July and August, 1982. Affidavits of R. Peter Simpson, principal compliance officer for the Worker's Compensation Division of the State of Wyoming, establish that Titus submitted the disputed payments and payroll reports, together with statutory penalties for late payment,[3] as follows:

"Payroll reports and monthly payments required by this act [§§ 27–12–101 through 27–12–804] shall be submitted on or before the fifteenth day of the month following the month for which the earnings are computed and paid."

**3.** Section 27–12–207(c), infra.

| MONTH | REPORT AND[4] PAYMENT DUE | REPORT AND PAYMENT ACTUALLY RECEIVED FROM DEFENDANT/EMPLOYER |
|---|---|---|
| May, 1982 | June 15, 1982 | June 30, 1982 |
| June, 1982 | July 15, 1982 | August 3, 1982 |
| July, 1982 (Plaintiff hired in late July) | August 15, 1982 | October 7, 1982 |
| August, 1982 (Plaintiff injured August 4) | September 15, 1982 | October 7, 1982 |

The Federal District Court asks this court to determine whether an employer, who has contributed to the worker's compensation fund according to the above schedule, retains his immunity to suit under Wyoming law.

## IMMUNITY PROVISIONS OF THE WORKER'S COMPENSATION ACT

■ The Wyoming Worker's Compensation Act represents a compromise between the employer and the employee: in exchange for contributing to the compensation fund for the benefit of the injured or the heirs of a deceased employee, the employer receives absolute immunity from all common-law rights of action in tort for the employee's work-related injury or death. *Parker v. Energy Development Co.*, Wyo., 691 P.2d 981 (1984); *Baker v. Wendy's of Montana, Inc.*, Wyo., 687 P.2d 885 (1984); *Meyer v. Kendig*, Wyo., 641 P.2d 1235 (1982). Article 10, § 4 of the Wyoming Constitution, as amended in 1914, authorizes the Worker's Compensation Act and confers immunity upon employers contributing on behalf of their employees "as required by law":

" * * * As to all extra hazardous employments the legislature shall provide by law for the accumulation and maintenance of a fund or funds out of which shall be paid compensation as may be fixed by law according to proper classifications to each person injured in such employment or to the dependent families of such as die as the result of such injuries, except in case of injuries due solely to the culpable negligence of the injured employee. * * * The right of each employee to compensation from such fund shall be in lieu of and shall take the place of any and all rights of action against any employer *contributing as required by law* to such fund in favor of any person or persons by reason of any such injuries or death." (Emphasis added.)

Section 27–12–103(a), W.S.1977, restates the Constitution's exclusive-remedy provisions:

"The rights and remedies provided in this act [§§ 27–12–101 through 27–12–804] for an employee and his dependents for injuries incurred in extrahazardous employments are in lieu of all other rights and remedies against any employer *making contributions required by this act*, or his employees acting within the scope of their employment unless the employees are culpably negligent, but do not supersede any rights and remedies available to an employee and his dependents against any other person." ﹜

■ Section 27–12–103(c), W.S.1977, describes the conditions which must occur

---

4. See n. 2, supra.

before an employer can be considered out of compliance with the law and subject to suit:

> "This act does not limit or affect any right or action by any employee and his dependents against an employer for injuries received while employed by the employer when the employer at the time of the injuries has not qualified under this act for the coverage of his eligible employees, or having qualified, is either delinquent in the payment of premium on an injured employee's earnings for three (3) months immediately prior to the date of injury, or one (1) quarterly payroll reporting period when privileged to report quarterly. When an employee's employment starts within the month or yearly quarter of the date of injury, the status of delinquency or not contributing shall not apply until after the regular payroll reporting date."

Under the express provisions of this statute, an injured employee may sue his employer in tort if the employer is delinquent in making contributions on that injured employee's earnings for three months (or one quarter) immediately prior to the injury. In the event an employee incurs an injury in the month or quarter of his hire, "the status of delinquency" applies after the regular payroll reporting date rather than immediately prior to the date of injury. In answering the question certified to this court, we must determine the statute's application to an employee injured in the month following the month of his employment, a situation not explicitly covered by § 27–12–103(c).

*Plaintiff's Position*

Plaintiff focuses on the language in Art. 10, § 4 of the Constitution and similar language in § 27–12–103(a) which says that the Worker's Compensation Act provides an injured employee's exclusive remedy against an employer contributing to the compensation fund "as required by law." Plaintiff contends that his employer failed to contribute as required by law since payments for the months of May, June, July and August, 1982, were submitted late, in violation of § 27–12–201(a), supra n. 2. Therefore, plaintiff urges, his employer was delinquent and cannot claim the immunity available to lawfully contributing employers under our worker's compensation enactments. Plaintiff rounds out this position by characterizing the specific provisions of § 27–12–103(c) as exceptions to the general rule of no immunity for noncomplying employers, mandated by the Constitution and § 27–12–103(a). Since the present employment situation does not fit within the circumstances described by § 27–12–103(c), the rule of common-law liability controls, according to plaintiff.

Alternatively, plaintiff suggests that the last sentence of § 27–12–103(c) applies to all situations where an employee has worked less than three months at the time of his injury.[5] In such cases, the employer's payment record on the injured employee's earnings as of the next regular reporting date after the injury would control the employer's immunity to suit. Under this theory, an employee who had worked only one month at the time of his injury could, in addition to claiming worker's compensation benefits, sue his employer in tort if the employer were one day late in paying the premium on that month's earnings.

*Legislative Intent*

A basic tenet of our judicial system holds that a statute must be read in light of its purpose. *People v. Platte Pipe Line Company*, Wyo., 649 P.2d 208, 212 (1982). We do not think plaintiff's reading of our worker's compensation laws comports with the legislative intent in establishing an industrial insurance program to provide relief to injured workers. *Baker v. Wendy's of Montana, Inc.*, supra; *Zancanelli v. Central Coal & Coke Co.*, 25 Wyo. 511, 173 P. 981 (1918).

---

**5.** The Wyoming Trial Lawyers Association filed an amicus curiae brief in support of this position.

Under our rules of statutory interpretation, we have a duty to make sense out of a statute and give full force and effect to the legislative product. *McGuire v. McGuire*, Wyo., 608 P.2d 1278, 1285 (1980). We presume legislative enactments to be reasonable and logical, *Department of Revenue and Taxation v. Irvine*, Wyo., 589 P.2d 1295, 1298 (1979), and will ascertain intent from the language of the statute whenever possible. *McGuire v. McGuire*, supra; *Department of Revenue and Taxation v. Irvine*, supra. In addition, we must interpret together statutes relating to the same subject to avoid conflicting and confusing results. *Department of Revenue and Taxation v. Irvine*, supra.

Section 27–12–103(c), as we have said, provides that an employer loses his immunity to suit if he is

" * * * delinquent in the payment of premiums on an injured employee's earnings for three (3) months immediately prior to the date of injury."

For an employee injured in the month of hire,

" * * * the status of delinquency or not contributing shall not apply until after the regular payroll reporting date."

To ascertain the legislative intent with respect to an employer's loss of immunity when an employee is injured in the month following his hire, we must determine the meaning of the term "delinquent" as used in the statute and then decide whether the employment conditions expressly addressed by the statute provide a mechanism for analyzing varying situations.

*Delinquent in Payment of Premiums*

Under § 27–12–201(a), supra n. 2, an employer who reports monthly must submit payments on or before the 15th day of the month following the month for which the earnings are computed and paid. Accordingly, an employer who fails to contribute the amount owed by the 15th of the month is considered delinquent in the payment of that month's premiums. However, § 27–12–207(c), W.S.1977, affords the employer a means to cure his delinquency:

"If any employer fails to make any of the payments within fifteen (15) days of the times required by this act, ten percent (10%) of the amounts due shall, in the absence of extenuating circumstances, immediately be added to the payment due. The penalty is part of the payment due for all purposes if suit is instituted as provided in this act."

Thus, an employer who has missed a regular reporting date may, under this statute, pay the full amount due plus statutory penalties and bring himself into compliance with the Worker's Compensation Act. By curing his delinquency prior to the date of an injury, he can protect himself from liability in tort for that injury.

An analogy may be drawn between the contribution requirements of the Worker's Compensation Act and the collection provisions of our property-tax statutes, §§ 39–3–101 through 39–3–203, W.S.1977. Taxes not paid by the specified due date are considered "delinquent," § 39–3–101(b), and may be collected through the sale of the owner's property, § 39–3–102(d). A taxpayer may remove the delinquency, however, by payment of the past-due taxes plus interest and prevent the forced sale of his property. Section 39–3–102(c) and (d). Indeed, a property owner may cure a delinquency and redeem his property within four years after its sale by paying the sale price plus specified charges. Sections 39–3–108 and 39–4–102. These provisions reflect the purpose of our property-tax laws to secure proper payment to the public treasury rather than to punish a taxpayer who misses the statutory due date.

In similar fashion, the payment schedule, penalty assessment and loss of immunity provisions in our worker's compensation laws are designed to promote prompt, complete payment to the compensation fund. We cannot agree with plaintiff that an employer who pays past-due premiums in full, together with statutory penalties, remains delinquent for purposes of assessing his immunity to suit under

§ 27–12–103(a) and (c). To so conclude would contravene the fundamental policy of the Worker's Compensation Act to free employers from liability in tort in exchange for their maintaining a relief fund for injured employees. An employer would have no incentive to make a particular payment after he had missed the due date by as little as one day, if he would still be considered delinquent and potentially liable to suit.

■ We cannot apply the overly narrow reading of § 27–12–103(a) and (c) urged by plaintiff in disregard of an obvious legislative intent for a broader reading. *People v. Platte Pipe Line Company*, supra, 649 P.2d at 213. We hold, therefore, that for purposes of assessing an employer's immunity to suit under § 27–12–103(a) and (c), an employer who has paid his premiums in full for a given month, plus statutory penalties for late payment, is contributing to the worker's compensation fund as required by law and cannot be considered delinquent for that month.

■ This ruling has the practical effect of treating the three-month or one-quarter provision in § 27–12–103(c) as a grace period. An employer who has contributed to the benefits fund, even though late, for any of the three months immediately prior to the date of injury retains his immunity to suit. Stated conversely, when an employer, on the date of injury, has failed to make any of the required payments for the three months immediately prior to injury, the law presumes a breach of statutory duty to the injured employee and withdraws the employer's protection against tortious liabili-

ty. In this way, the employer who contributes monthly loses his immunity to suit under the same conditions as does the employer who contributes quarterly.[6]

## Employment for Fewer Than Three Months

■ Keeping in mind the legislative policy that an employer's exposure to suit depends upon his payment record over a span of three specified months, we consider the statutory directive to apply the "status of delinquency or not contributing" after the payroll reporting date, when an employee sustains an injury within the month of his hire. Since no reporting date for that employee's earnings has elapsed at the time of injury, the statute requires that calculation of the three-month grace period begin with the next regular reporting date after the injury. If the employer fails to pay the premium due on that employee's earnings for three consecutive months after the first relevant reporting date, the employer loses his immunity to suit.[7]

Other possible employment situations fall within the two extremes expressly addressed by § 27–12–103(c). For example, an employee might have worked one or two months on the date of his injury so that at least one reporting date covering his earnings would have elapsed at the time of injury. In such cases, the status of delinquency must be determined by the employer's payment record before and after the injury. That is, measurement of the grace period for payment on that employee's earnings would begin with the earliest reporting date prior to the date of injury and extend a sufficient amount of time beyond

6. The history of § 27–12–103(c) evidences the current legislative intent to treat monthly and quarterly contributing employers equally for purposes of determining loss of immunity to suit. Section 27–53, W.S.1957, the predecessor to § 27–12–103(c), provided that an employer could lose his immunity to suit if he were

"* * * either delinquent in the payment of premium on an injured worker's earnings for two months immediately prior to the date of injury of any employee, or two quarterly payroll reporting periods when privileged to report quarterly."

In 1975, the legislature amended this statute to permit an injured employee's suit if his employer were either three months or one quarter delinquent in contributing to the compensation fund. Chapter 149, Section 1, S.L. of Wyoming 1975.

7. An employee may have earned wages for only a few days at the time of his injury and may be unable to work following his injury. Nevertheless, § 27–12–103(c) entitles the employer to three months in which to pay the premium on those earnings before losing his immunity to suit.

the injury to permit assessment of the employer's record of contributions for three months.

■ By using the foregoing formula, all employees and employers receive equal treatment under the statute, regardless of the length of time a particular employee has worked on the date of his injury. We avoid the unreasonable conclusion that the legislature, in enacting § 27–12–103(c), intended to afford new employees more generous rights than long-term employees to sue their employers in tort for work-related injuries. Likewise, we cannot reasonably attribute to the legislature an intention to hold a noncomplying employer subject to suit only when the employee incurs an injury in the month of hire or after working at least three months. Legislative enactments enjoy the presumption of logic and reasonableness. *Department of Revenue and Taxation v. Irvine,* supra.

We conclude that the legislature, in enacting § 27–12–103(c), established a policy of affording an employer a three-month grace period in which to pay the premiums for each employee before losing immunity to suit. We conclude further that § 27–12–103(c) furnishes the means for calculating the grace period when an employee has worked for fewer than three months on the date of injury.

■ In the instant case, the employee suffered injury on August 4, after beginning work in late July. Since no regular reporting date for his earnings exists prior to the date of injury, the status of delinquency must be determined after the next regular reporting date after the injury. Therefore, measurement of the three-month grace period begins with August 15, the reporting date for wages plaintiff earned in July. The employer paid these premiums on October 7, well within the three-month period allotted by statute. Therefore, the employee's exclusive remedy in this case lies within the Wyoming Worker's Compensation Act.